**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| JASON R. SEARCY, *Trustee*, and | § | |
| OFFICIAL UNSECURED CREDITORS | § | |
| COMMITTEE, | § | |
| | § | |
| Appellants, | § | |
| | § | Case No. 4:15-cv-369 |
| v. | § | USBC Case No. 13-42925 |
| | § | |
| ALBERT C. BLACK, III, | § | |
| | § | |
| Appellee | § | |

.

## MEMORANDUM OPINION AND ORDER

Before the Court is Appellants' appeal from the order of the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, awarding payment to Appellee Albert C. Black for pre-petition work as a state court receiver and compensation for his post-petition expenses before the Bankruptcy Court as a superseded custodian. After reviewing the parties' briefs, the record in this case, and the applicable law, the Court **AFFIRMS** the order of the Chief Bankruptcy Judge.

## I.   BACKGROUND

On December 9, 2013, Debtor Richland Resources Corporation, further described below, filed its voluntary petition for bankruptcy pursuant to Chapter 11 in Cause No. 13-42925 in the Sherman Division of the Bankruptcy Court. Pre-petition, Appellee Black had been appointed a receiver in related state proceedings later removed to the Bankruptcy Court. As a result, Appellee eventually filed a Request for Allowance of Administrative Priority Claim Pursuant to

§ 543(c)(2) and § 503(b)(3)(B) of the Bankruptcy Code (USBC Doc. No. 216)[1], on August 28,

2014. The Chapter 11 Trustee, Jason R. Searcy, filed an Objection (USBC Doc. No. 218) to

Appellee's request on September 10, 2014. Not long after, the Official Unsecured Creditors

Committee filed its own Objection (USBC Doc. No. 226) on September 18, 2014. The

Bankruptcy Court conducted an evidentiary hearing on Mr. Black's Request for Allowance.

(*See* USBC minute entry of October 23, 2014.)

The Bankruptcy Court's March 31, 2015, Memorandum Opinion and Order Regarding

Albert C. Black III's Request for Allowance of Administrative Claim (USBC Doc. No. 265) (the

"Memorandum Opinion and Order" or "Mem. Op.") granted-in-part and denied-in-part

Appellee's request for $247,313.39 and awarded him $171,255.20 for his time spent as a receiver

and services provided by a law firm and a logistics company, On-Target (by which Appellee was

also employed). It is this award Appellants seek to overturn.

Appellate jurisdiction is proper in this Court pursuant to 28 U.S.C. § 158(a) and Federal

Rules of Bankruptcy Procedure 8001, *et seq. See Earwood v. Bodenheimer, Jones, Szwak &

Winchell, L.L.P.*, 2013 WL 5234116, at *1 (W.D. La. Sept. 16, 2013).

The Bankruptcy Court's Memorandum Opinion and Order cogently recites the detailed

background and procedural posture of the case as it stood in the Bankruptcy action[2]:

> 1.     Prior to bankruptcy, Richland Resources Corp. d/b/a RRCH Corp.
> ("RRCH") was engaged in the business of developing and exploring oil reserves
> in Texas. Investors raised concerns regarding RRCH's use of funds in and
> around February 2013.

---

[1] The Court will refer to docket entries in the Bankruptcy action as "USBC Doc. No. XX" and to
docket entries in the instant case as "Doc. No. XX."

[2] While the brief summary immediately above serves to identify the general nature of this action,
a thorough understanding is better achieved through the Bankruptcy Court's detailed description.

2.      On June 12, 2013, Steadfast Resources, Inc. initiated a case in the 193rd Judicial District Court for Dallas, County, Texas, styled and numbered *Steadfast Resources, LLC v. Kenneth A. Goggans, Richland Resources Corp. d/b/a RRCH Corp., Richland Resources Corporation d/b/a Richland International Resources Corporation, Manek Energy Pressure Pumping, LLC, Manek Energy, Inc., Manek Exploration, Inc., Manek Energy Holdings, Inc., Manek Equipment, Inc., Oilman Supply Co., LLC, Max Elghandour, Kristoffer R. Goggans and Kimberly Goggans*, Cause No. DC-13-06467.   Steadfast alleged that investors had entrusted funds to Kenneth Goggans to invest in RRCH and Richland Resources Corporation d/b/a Richland International Resources Corporation ("RIRC"). Steadfast further alleged that, over time, Mr. Goggans had diverted millions of dollars to his family members and other companies.

3.      At a hearing on September 23, 2013, Steadfast requested that the state court issue an injunction to prevent the diversion of additional assets. The state court, acting *sua sponte*, went beyond Steadfast's requested relief.  The state court issued an order on September 26, 2013 immediately appointing Mr. Black as the receiver for eight corporate defendants, namely, RRCH, RIRC, Manek Energy Pressure Pumping, Manek Energy, Manek Exploration, Inc., Manek Energy Holdings, Manek Equipment, and Oilman Supply.

4.      Mr. Black had never heard of Steadfast or the corporate defendants prior to his appointment. He is an employee of On-Target Supplies & Logistics, Inc. ("On-Target").  He learned of his appointment from communications with the state court.   At the hearing in this Court on October 23, 2014, he testified that it is common for court-appointed receivers to be drawn from a list or panel maintained by the state court.

5.      In its receivership order, the state court found and concluded that it appeared the receivership defendants had misappropriated at least $4.1 million from Steadfast and diverted those funds among themselves. The state court authorized the receiver "to do any and all acts necessary to the proper and lawful conduct of the receivership…"   These authorized activities expressly included the following:

      a.      Take charge of the property and assets of the Receivership Defendants from all individual and entities in possession, insure same against hazards and risks, and attend to their periodic maintenance;

      b.      Operate and conduct the business of the Receivership Defendants;

c.   Take possession and control of any money, deposits, securities, accounts, or other properties and assets of any Receivership Defendants, legally and/or beneficially owned, from any banks, brokerage houses, or other institutions in possession; and

d.   Remove and take possession of and receive from any bank or similar institutions all property and assets kept in safety deposit boxes by, for and/or on behalf of any Receivership Defendants.

6.    After his appointment, the receiver quickly identified RRCH as the only corporate receivership defendant with any substantial value.  He testified that the other corporate receivership defendants appeared to be shell companies through which Mr. Goggans moved assets.  The receiver began trying to find and follow the paper trail left [by] Mr. Goggans when he transferred assets from and through RRCH.

7.    The receiver did not seek to use Steadfast's attorney to assist him in administering the receivership.  Instead, in early October 2013, the receiver retained the law firm of Crouch and Ramey, LLP, to represent him in his role as receiver. In addition, on or about October 21, 2013, the receiver engaged the services of On-Target to provide the receivership with business support, consulting services, logistical support, and related asset protection services.

8.    Over a three-day period beginning on or about October 22, 2013, the receiver removed all the property of the corporate receivership defendants from their offices, including, without limitation, books and records, computers, office furnishings, cabinets and televisions.  On-Target provided the personnel and logistical support necessary to remove, categorize, sort and store all of the removed items.  The property has been stored in a secure, climate-controlled environment since its removal, and On-Target has charged the receiver the same rental rate that it charges all of its customers.

9.    Crouch & Ramey, as counsel for the receiver, filed a motion to employ their firm and On-Target in the state court. The receiver explained that it was necessary to retain counsel to sue the individual receivership defendants in order to recover any funds and property they had misappropriated.

10.    Crouch & Ramey, as counsel for the receiver, also filed a motion seeking to compel Mr. Goggans to provide the receiver with full and unfettered access to the financial records of the corporate receivership defendants.  The receiver sought to modify the receivership order to expressly compel Mr. Goggans to cooperate with his investigation.

11.     Crouch & Ramey incurred the bulk of their fees in October and November 2013.

12.     The state court set the receiver's motions for hearing on December 9, 2013.

13.     On December 9, 2013, Kenneth Goggans filed bankruptcy petitions in this Court for all of the corporate receivership defendants. In particular, (i) RRCH filed a chapter 11 case; (ii) RIRC filed a chapter 11 case, which was subsequently converted to a chapter 7 case; (iii) Manek Energy Pressure Pumping, LLC filed a chapter 7 case; (iv) Manek Energy, Inc. filed a chapter 7 case; (v) Manek Exploration, Inc. filed a chapter 7 case; (vi) Manek Energy Holding, Inc. filed a chapter 7 case; (vii) Manek Equipment, Inc. filed a chapter 7 case; and (viii) Oilman Supply Co., LLC filed a chapter 7 case.

14.     Counsel for RRCH also served as bankruptcy counsel for all of the other corporate receivership defendants.  The corporate receivership defendants paid their bankruptcy counsel $114,448.00 for purposes of satisfying pre-petition invoices and filing fees.   After satisfying the pre-petition invoices, counsel placed the balance of $76,806.00 in his trust account as a pre-petition retainer for continuing to represent RRCH in this chapter 11 case.

15.     On February 7, 2014, the chapter 7 trustee filed reports of no distribution in four of the bankruptcy cases filed by the corporate receivership defendants – in particular, the chapter 7 trustee filed no distribution reports in the bankruptcy cases of Manek Exploration, Manek Energy Holdings, Manek Equipment, and Oilman Supply. In the bankruptcy case of RIRC, the chapter 7 trustee filed a report of no distribution on April 7, 2014.   The trustees stated in their reports that none of these debtors had any assets to distribute to creditors.

16.     In two other cases, the chapter 7 debtors appear to possess potential assets that may be liquidated and distributed to creditors. In particular, Manek Energy lists a $14,000 tax refund from the Internal Revenue Service in its bankruptcy schedules, and Manek Energy Pressure Pumping lists a possible refund from a pre-petition insurance policy.

17.     Thus, of the eight corporate receivership defendants who filed for bankruptcy on December 9th, the only debtor with significant assets was RRCH.

18.     RRCH's case has not been substantively consolidated with the cases filed by the other receivership defendants.  However, on the same day RRCH filed for bankruptcy, RRCH removed the entirety of the receivership litigation to this Court.  RRCH also demanded that the receiver immediately turnover all the

property in his possession. RRCH represented that the property held by the receiver was critical to its operations as well as its ability to comply with the reporting requirements of the Bankruptcy Code.

19.     The receiver challenged the authority of Mr. Goggans to file bankruptcy petitions for the corporate defendants and, thereby, evade the receivership order. The receiver filed motions to dismiss the chapter 11 cases of RIRC and RRHC on December 20, 2013. He also entered into an agreed order that required him to continue to safeguard the property in his possession pending the resolution of his motion to dismiss.

20.     The Court conducted a hearing on the receiver's motions on January 21, 2014. At the conclusion of the hearing, the Court denied the motions on the record. The Court entered an amended order denying the receiver's motions on January 23, 2014.

21.     After the hearing, Mr. Goggans retrieved significant documents from the receiver. However, RRCH did not take any action to recover its property from the receiver.

22.     On January 23, 2014, the U.S. Trustee appointed an official unsecured creditors' committee. On January 28, 2014, the committee filed a motion seeking an appointment of a chapter 11 trustee. RRCH did not oppose the motion for a chapter 11 trustee.

23.     On February 4, 2014, the Court entered an order appointing a chapter 11 trustee to oversee RRHC's reorganization pursuant to § 1104(a) of the Bankruptcy Code. RRHC was not doing business at the time of the trustee's appointment.

24.     Counsel for the receiver contacted the chapter 11 trustee about turning over the items in the receiver's possession. In a letter dated March 31, 2014, counsel stated that the receiver remained in possession of numerous boxes, file cabinets and computer equipment, among other things, belonging to RRCH. Counsel explained that time was of the essence as the receiver was incurring $4,750 each month in storage and security costs.

25.     The chapter 11 trustee did not take any immediate action to recover RRCH's property from the receiver.

26.     On July 18, 2014, bankruptcy counsel for RRCH filed an application seeking an award of his post-petition fees in the total amount of $95,846.

27.     In July 2014, the chapter 11 trustee, Steadfast, and others reached a settlement regarding the dispute over Mr. Goggans' use of the funds provided by investors to RRCH.   The settlement contemplated payments of more than $2 million to the bankruptcy estate of RRCH.

28.     The chapter 11 trustee still had not responded or taken possession of RRCH's property when the receiver filed his application for a priority administrative claim against RRCH's bankruptcy estate on August 28, 2014.   In the application, the receiver requests an administrative priority claim in the total amount of $247,313.39.

29.     The chapter 11 trustee finally contacted On-Target about removing the property approximately a week before the hearing on the receiver's request for an administrative expense.

30.     The receiver, who goes by the first name "Tre," has formed a business called TreCo, Ltd. ("TreCo").   The receiver is the only employee of the business. His application for an administrative expense attaches monthly statements from TreCo for the time he personally spent acting as a receiver.   His entries begin on September 26, 2013, end on December 20, 2013, for a total amount of $58,369. His application also attaches invoices from On-Target totaling $134,204 as well as invoices for attorneys' fees and expenses from his legal counsel totaling $54,740.92.   The receiver states in his application that he is not requesting reimbursement for legal fees relating to his opposition to the bankruptcy filing or the motion to dismiss.

Mem. Op. (USBC Doc. No. 265) at 1-7.   Following a detailed analysis, the Bankruptcy Court granted the Receiver's request in part and denied it in part, culminating the Memorandum Opinion and Order with:

It is further **ORDERED** that Mr. Black is hereby allowed an administrative claim in the total amount of $171,255.20, which consists of $58,369 for the time spent by Mr. Black as receiver, $65,334.70 for the services provided by On-Target, $44,179 for the services provided by Crouch & Ramey, and $3,372.50 for the services provided by Wright Ginsburg.

*Id.* at 18.   Appellants jointly filed a Notice of Appeal this decision.   *See* USBC Doc. No. 274

(specifying appeal of Bankruptcy Court's Memorandum Opinion and Order at USBC Doc. No.

265).   Appellants summarize the issues they raise on appeal[3] as:

1.      Whether the bankruptcy court's determination that the state court receiver
        provided any quantifiable benefit to the bankruptcy estate was error.   The
        bankruptcy court recognized that the heart of the objections raised to the
        allowance of Mr. Black's administrative claim was "that the receiver's
        fees did not benefit RRCH's estate and were not reasonable or necessary."
        [ ]   Yet, the court allowed the majority of these claims when there was no
        evidence of any quantifiable benefit to the estate.   [ ]

2.      The state court receiver was appointed as the receiver of numerous
        entities, yet asserted all of his claims in Richland Resources Corporation's
        Chapter 11 Bankruptcy without allocating any of the claims to the other
        entities.   And despite objection, the bankruptcy court concluded that the
        receiver did not have to allocate any of the claims between the various
        entities covered by the receivership order.   Was this error? [ ]

3.      It is undisputed that the state court receiver was a custodian and as such,
        obligated to comply with 11 U.S.C. § 543(b).   Black did not comply, and
        did not request to be excused from compliance with this requirement.
        Yet despite this, the bankruptcy court granted his application for
        compensation.   Was this error?   [ ]

Appellants' Brief at 1-3 (internal citations and argument as to standards of review omitted).

Appellee states the issues somewhat differently, including splitting Appellants' issue number 3

into two separate issues.   However, both the Appellants' and the Appellee's versions of the

issues are substantively similar, except for differing positions on the specific standard of review

for certain issues.   The Court will address the arguments in turn.

## II.      STANDARD OF BANKRUPTCY APPELLATE REVIEW

---

[3] In Appellants' Brief, Appellants cross-reference the "Statement of Issues on Appeal" contained
in their Joint Designation by Appellants for Inclusion in Record on Appeal and Statement of
Issues on Appeal, *see* USBC Doc. No. 278 at 3-4, with an explanation of how the issues raised in
the two documents relate.   The Court will consider the issues as raised in Appellants' Brief.

This Court reviews the Bankruptcy Judge's findings of fact for clear error. *In re IFS Financial Corp.*, 803 F.3d 195, 203 (5th Cir. 2015); *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701 (5th Cir. 2003). A finding of fact is clearly erroneous only if "on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." *In re Dennis*, 330 F.3d at 701 (quoting *Hibernia Nat'l Bank v. Perez (In re Perez)*, 954 F.2d 1026, 1027 (5th Cir. 1992). The Court conducts a *de novo* review of the Bankruptcy Judge's conclusions of law. *Id.* Mixed questions of law and fact are reviewed *de novo*. *In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1995).[4]

## III.   DISCUSSION AND ANALYSIS

As outlined above, the Bankruptcy Court granted-in-part and denied-in-part Appellee's request for an administrative priority claim against the bankruptcy estate, and trimmed the amount requested of $247,313.39 to an award of $171,255.20. The Chief Bankruptcy Judge explained her methodology in doing so in her Memorandum Opinion and Order. Nonetheless, following denial of their motion for reconsideration and now on appeal, Appellants contend error in granting even the reduced award.

### A.   Benefit To The Bankruptcy Estate

In their first issue, Appellants contend that the Bankruptcy Court erred when it granted an allowance of $171,255.20 to Appellee Receiver Black despite an alleged lack of evidence of the benefit of Mr. Black's performance to the bankruptcy estate. After restating at length their earlier arguments as to the appellate standard of review, the applicable Bankruptcy Code, and the

---

[4] The parties disagree whether "benefit to the bankruptcy estate" should be reviewed for clear error or *de novo*. Regardless, this Court has reviewed the arguments raised and, in particular, the record *de novo*.

contentions of the Appellant Chapter 11 Trustee and the Appellant Official Creditors'
Committee, *see* Appellants' Brief at 8-12, Appellants identify their specific points of alleged
error.

Appellants contend that although Appellee Black seized the Debtor's "office furniture,
telephone equipment, etc."[5] and provided proof of the charges for storing them, he "offered no
evidence that it was reasonable and necessary to pay $4,750 a month for 5,000 square feet to
store the items or that this in any way was a benefit to the estate." Appellants' Brief at 14.
Instead, Appellants contend, the Appellant Chapter 11 Trustee testified that "he could not
identify anything Black did that was a benefit to the estate." *Id*. The theme of "no evidence"
and the Trustee's testimony of "no benefit to the estate" are repeated throughout Appellants'
argument.[6]

Similarly, Appellants do not dispute that Appellee Black hired law firm Crouch &
Ramey, On-Target or TreCo to handle legal, logistical and administrative issues deriving from
his receivership appointment in the state court, but contend that there was "no evidence" that the
amounts billed for these services were reasonable or necessary or a benefit to the estate. *Id*.
Appellants also argue that there is no evidence that the books and records Appellee Black

---

[5] Appellants commonly characterize the property Appellee Black seized in his role as Receiver
as little more than office furniture. In fact, the inventory included a wide array of computer
systems, copiers, printers, and associated equipment as well as the Nortel telephones and other
items necessary for an ongoing business. *See generally* USBC Doc. No. 216-1 (Inventory).

[6] Appellants make much of the fact that neither Appellee Black nor the testifying representatives
of On-Target or Crouch & Ramey stated in testimony that their activities were either "reasonable
or necessary" or that they "benefitted the estate." However, even had counsel for either side
asked that question during testimony, those are determinations for the Bankruptcy Judge to make.
Here, the Chief Bankruptcy Judge did precisely that, based in part on the testimonial evidence
adduced during the October 23, 2014, hearing.

delivered aided in post-petition litigation against Steadfast and others, or that it benefitted the bankruptcy estate. *Id*. at 15. Likewise, that there is no evidence the Receiver's action to store and safeguard property belonging to RRCH was reasonable or necessary or a benefit to the estate. *Id*. Moreover, Appellants explicitly state that, "in fact there was direct evidence to the contrary." *Id*. Despite this bald contention, Appellants have not identified any such evidence whatsoever, which undercuts their argument.

Instead, Appellants simply argue that "It is the burden of the party requesting an administrative expense to prove benefit to the estate." *Id*. at 14 (quoting the Mem. Op. at 8 (observing that the "benefit-to-the-estate" standard applies to both pre-petition services under 11 U.S.C. § 503(b)(3)(E) and post-petition services under 11 U.S.C. § 543(b))). They therefore base their entire claim on the proposition that Appellee Receiver Black did not provide "any evidence" that his assistance (including hiring others for their specialized skills) was reasonable or necessary or that it constituted a benefit to the bankruptcy estate. In particular, Appellants contend the Chief Bankruptcy Judge did not base her findings on record evidence. Their argument is without merit.

The Bankruptcy Court's Memorandum Opinion and Order is replete with determinations that Appellee Black's efforts were, for the most part, "reasonable or necessary" and were of "benefit to the estate." In several instances, the Bankruptcy Court disallowed certain claims, discounting Appellee Black's original request by about $76,000. It did so explicitly where Appellee Black *did not* submit adequate evidence to show that the services claimed were

reasonable or necessary or benefitted the estate. It is clear that the Bankruptcy Court carefully considered record evidence in making its determinations of benefit to the estate.

To that end, Appellee summarized certain evidence of his service and the services he hired as follows:

1.  Hired Crouch & Ramey as counsel to assist him in his efforts as Receiver (Tr. 18:11-16; Ex. 2);

2.  Hired On-Target Supplies & Logistics to provide business support and consulting services (Tr. 18:17-21; Ex. 3);

3.  Made demand on the Receivership Defendants to produce documents as required by the state court receivership order, which was necessary because the Receiver did not receive the documents initially requested from those parties at their first meeting with the Receiver (Tr. 19:14-20:21; Ex. 4);

4.  Traveled to Leon County to identify oil and gas interests held by RRCH in Leon County (Tr. 20:22-21:5);

5.  Identified "large gaps" in the documents and bank accounts pertaining to the Receivership Defendants and their financial dealings, which missing documents the Receiver believed were "in the possession of the individual defendants, Kenneth Goggans, Max Elghandour, Kristoffer Goggans and Kimberly Goggans, or their agents, attorneys, employees, representatives, related companies, or subsidiaries" (Ex. 6; Tr. 21:6-22:16);

6.  Requested the state court to modify its receivership order to (i) direct the individual defendants, their agents, attorneys, employees, representatives, related companies, or subsidiaries to turn over to the Receiver all books, records, documents (whether in digital or paper form) and all passwords for access to any databases pertaining to the financial transactions of the Receivership Defendants, and (ii) direct Citibank, Texas Heritage Bank, and Sovereign Bank to transfer the Receivership Defendants' funds to the Receiver and provide the Receiver with all records regarding the Receiver Defendants' accounts so that he could trace money transferred between the individual Defendants and the entity Defendants (Ex. 6; Tr. 21:6-22:16);

7.  Complied with the receivership order's requirements to not move or otherwise alter the property and to ensure that the facility where the

property was located was properly insured (Tr. 38:1-7);

8.      Complied with the receivership order's requirements to provide security to
        deny access to the property to anyone, other than the debtors and their
        agents and representatives, while the bankruptcy cases were pending
        (Tr. 38:8-17);

9.      Stored the receivership property, which included computers, servers, and
        printers, in a secure, climate controlled, and accessible environment,
        providing positioning and staging of the inventory in a manner consistent
        with On-Target's practices for any of its warehousing jobs (Tr. 38:25-
        39:7, 41:8-17, 41:25-43:8); and

10.     Work organizing documents and analysis of potential claims (Tr. 26:7-11).

Appellees' Sur-Reply (Doc. No. 20) at 3-4. The Court has reviewed and finds this to be

abundant evidence of "benefit to the estate" by Appellee Black and the services he hired.

Explicitly addressing Appellants' claim that "no evidence" supported the need for 5,000

square feet of warehouse space, Scott Sessions (General Counsel and Senior Vice President for

On-Target) testified that the space is not excessive for the purpose of storing all of the property

that the Appellee Receiver Black seized. *See* Tr. 41:18-21. That constitutes evidence

supporting a finding by the Bankruptcy Court that such space was reasonable and necessary.

Mr. Sessions also testified that transporting all of this property from the office site to the

warehouse took multiple trips over a three-day period using On-Target's 12-15 foot Bobtail

truck. Tr. 42:22-25 – 43:1-7.

In her Memorandum Opinion and Order, the Chief Bankruptcy Judge also found that after

the bankruptcy petition had been filed in this case and after Appellee Black's motion to dismiss

the bankruptcy was denied, Black returned certain books and records to Mr. Goggans for use in

the Chapter 11 Trustee's litigation against, *inter alia*, Steadfast. That litigation resulted in a

settlement of over $2,000,000 to the bankruptcy estate.  Mem. Op. at 13.  Appellants argue that there is "no evidence" that these books and records resulted in the settlement and, in any case, that the settlement funds had not yet been paid to the bankruptcy estate at the time Appellants filed their brief herein.  Addressing the latter point first, whether the amount has been paid to the bankruptcy estate matters a great deal to the estate, but not at all for the analysis of whether Appellee Receiver's actions provided a benefit to the estate.  Here, the simple fact that Black preserved books and records that helped in any way to obtain a settlement from the absconding companies means that he provided a benefit to the estate.

As for Appellants' broad claim that there is "no evidence" that the records Appellee returned to Goggans actually had a part in obtaining the $2,000,000-plus settlement, the argument is little more than smoke.  Appellee Black testified that, via the counsel he retained, Crouch & Ramey, a letter demand for the documents was made on Ken Goggans' counsel.  Tr. 19:16-19.  Appellee therefore seized and preserved the records.  He also testified he allowed representatives of the Debtor to take what they needed from the inventory after the motion to dismiss was denied.  Tr. 26:4-6.  He further testified that he "was most definitely on the right track" for gaining the information he needed to pursue claims over the questionably transferred monies and that in time he could have pursued in good faith claims against Goggans for misappropriations of funds.  Tr. 15-21.  In the face of this evidence, the Court would require Appellants to affirmatively demonstrate the means by which they obtained the settlement, if not with the books and records Appellee provided.

In sum, Appellants' argument that there is "no evidence" to support the Bankruptcy Court's determinations that Appellee Black's services and management were "reasonable and

necessary" and of "benefit to the estate" fails.   This contention is without merit.

**B.    Allocation Of Receiver's Claim Among The Various Entities**

Appellants next contend that there is no evidence in the record to support the Bankruptcy Court's determination that Appellee Black's claim for compensation was properly allocated to RRCH alone, and not any of the related entities.

Appellants first appear to contend that the Bankruptcy Court erroneously read Texas law to give a court discretion in the taxation of costs and expenses where a receivership is appointed under state law.   However, to the extent the Appellants appear poised to argue the point, they then ignore it.[7]   Instead, they argue that the Bankruptcy Court erroneously allocated Appellee's compensation to RRCH alone on the finding that "RRCH is the only one of the eight receivership debtors with any significant assets."   Appellants' Brief at 17 (citing Mem. Op. at 11.)

To that end, Appellants simply cite one brief set of line items from Appellee's receivership inventory that list four hard hats and one cap from the entity Manek Energy.   *Id.* (citing USBC Doc. No. 216-1 at 1).   In other words, by this citation, they are suggesting that not all of the "significant assets" in the inventory belonged to RRCH, with the further implication that the fees and expenses claimed by Appellee Black should have been allocated accordingly.

Appellants are cherry-picking from the inventory list contained at USBC Doc. No. 216-1. A handful of line items, including the miniscule reference to the Manek Energy headgear above, are labeled as from receivership entities other than RRCH.   However, the great balance of the 11

---

[7]  Accordingly, Appellants do not dispute that under Texas law, a court has significant discretion in allocation the taxation of costs and expenses where a receiver is appointed.  *See Hill v. Hill*, 460 S.W.3d 751, 767 (Tex. App. – Dallas 2015, pet. denied) ("[W[here a receiver is appointed, taxation of costs of the receivership and the manner of their collection are matters entirely within the sound discretion of the trial court.").

pages and scores of line items of inventory under the heading of Richland Resources Receivership consist of copiers, computer servers, Nortel phones, cell phones, printers, shredders, laptop computers, computer monitors and associated computer accessories, desks, lamps, chairs and other office equipment seized from RRCH.   The cover letter on the inventory, from Appellee Receiver's counsel at Wright Ginsberg Brusilow, identifies the inventory as "significant property of Richland" in the Chapter 11 bankruptcy proceeding, meaning the Chapter 11 entity RRCH.   Appellants make no attempt to claim that these items are not the property of RRCH.   This property makes up far more "significant assets" than the four hard hats and a cap Appellants cite, or any number of similar minor chattels.   Moreover, as is discussed in greater detail in the previous section, RRCH also obtained a settlement in post-petition litigation for over $2,000,000.00, making it the holder – or at least the potential holder – of far more assets than has been identified for any other receivership entity.   In fact, Appellants have not even attempted to show that any other receivership entity or combination of entities has any significant assets whatsoever.

In that light, as Appellee correctly points out, each and every other receivership entity than RRCH entered into Chapter 7 bankruptcy (or in the case of RIRC, a Chapter 11 bankruptcy that was then converted to Chapter 7), suggesting liquidation of any of their remaining assets. *See* Appellee's Sur-Reply (Doc. No. 20) at 5 (citing Mem. Op. at ¶¶ 15-17, also quoted *supra*) (observing that the Chapter 7 Trustee filed reports of no distribution in five of the other seven receivership entities (including RIRC, post-conversion from Chapter 11 to Chapter 7), and only relatively minor assets belonging to the remaining two entities).

It is undisputed that Appellee was appointed Receiver over all of the entities in state

court.   RRCH – the only entity with significant assets – led the charge to Chapter 7 filings by all of the other receivership entities, while RRCH alone remained in Chapter 11.   The Court finds accordingly that the Bankruptcy Court did not abuse its discretion in determining that there was no reason to allocate Appellee Black's claim of fees and expenses among the other, non-asset-holding, entities.   This contention is without merit.

## C.      Receiver's Duty To Turn Over And Account Under 11 U.S.C. § 543(b)

Finally, Appellants contend the Bankruptcy Court committed error in granting Appellee's application for compensation despite that he did not immediately turn over the Debtor's property after the bankruptcy was filed, pursuant to 11 U.S.C. § 543(b).   Appellants also argue that Appellee Black failed to file an accounting.   As with their other arguments above, this claim only addresses part of the story.

Title 11 Section 543 states in pertinent part:

(b) A custodian shall--

(1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and

(2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian.

11 U.S.C. § 543(b).

Appellee argues that Appellants did not raise the issue of failure to file an accounting in the Bankruptcy Court and that it is therefore waived on appeal, citing, *inter alia*, *ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 595 n.29 (5th Cir. 2003) ("Because

appellants have not shown that they raised this issue below, it is waived."). Appellants respond that they did raise the issue of an accounting in paragraph 7 of individual Appellant Trustee's objections to Appellee's request for compensation, filed in the Bankruptcy Court. Appellants' Reply (Doc. No. 19) at 9 (citing USBC Doc. No. 218 at 3). However, Appellant Trustee did not actually object to the Bankruptcy Court that Appellee Black did not file an accounting. All he did was refer to the language of § 543(b) and argue simply that "the Receiver failed and refused to comply with this provision and refused to return the assets he had taken control of requiring the debtor to seek a turnover order from the bankruptcy court. Yet the Receiver seeks compensation for failing to comply with his legal obligation." *See* USBC Doc. No. 218 at 3. He made no argument as to an accounting.

Likewise, the Appellant Official Committee did not address the issue of an accounting at all in its objections to Appellee's application for compensation. *See* USBC Doc. No. 226. Although Appellants contend that the Official Committee did address the point in its separate Brief in Support of its objections, the Committee did nothing more than quote § 543(b) and state that "The appellant here did not comply with that statutory directive." *See* USBC Doc. No. 246 at 4. That is an insufficient argument to preserve the issue for appeal. *See In re Emergency Room Mobile Services, L.L.C.*, 529 B.R. 676, 694-95 (N.D. Tex. 2015) (undeveloped assertions in the Bankruptcy Court are insufficient to preserve the issue on appeal) (citing *In re MBS Mgmt Servs., Inc.*, 690 F.3d 352, 355 n.1 (5th Cir. 2012) and *In re Bradley*, 501 F.3d 421, 433 (5th Cir. 2007)). Further, Appellants did not raise the issue in their Motion for Reconsideration of the Bankruptcy Court's Memorandum Opinion and Order. *See* USBC Doc. No. 268. Accordingly, Appellants waived the issue for the purposes of the instant appeal.

Turning to the issue of turnover of the Debtor's property, Appellants' argument fails. In part, Appellants contend that Appellee Black's refusal to turn over the Debtor's property (or, for that matter, file an accounting) upon the filing of the bankruptcy could only be excused by the Bankruptcy Court under 11 U.S.C. § 543(d), which states:

> (d) After notice and hearing, the bankruptcy court—
>
>> (1) may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property, and
>>
>> (2) shall excuse compliance with subsections (a) and (b)(1) of this section if the custodian is an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, unless compliance with such subsections is necessary to prevent fraud or injustice.

As the Court will discuss, below, the Bankruptcy Court issued an order, on the Debtor's motion well before the Chapter 11 Trustee or the Official Committee were appointed, consistent with § 543(d).

Appellants also rely heavily on *Earwood v. Bodenheimer, Jones, Szwak & Winchell, L.L.P.*, 2013 WL 5234116, at *3 (W.D. La. Sept. 16, 2013), which in turn relies on *In re Bodenheimer, Jones, Szwak & Winchell L.L.P.*, 592 F.3d 664, 673 (5th Cir. 2009). The common background to both opinions was that a state court appointed Earwood as liquidator to facilitate the termination of a law partnership. The partnership proceeded to bankruptcy and Earwood opposed the bankruptcy, though he ultimately withdrew the opposition. He later filed for compensation under, *inter alia*, 11 U.S.C. § 543, which was opposed by the Trustee and others. The Bankruptcy Court found Earwood entitled to compensation, although it explicitly found that

Earwood had not provided a benefit to the bankruptcy estate. That decision was upheld on appeal to the District Court.

However, in *In re Bodenheimer*, the Fifth Circuit found that the Bankruptcy Court had erred by granting settlement compensation to Earwood that included his expenses in opposing the bankruptcy; and, that the Bankruptcy Court failed to apply a "benefit to the estate" analysis regarding Earwood's services. *In re Bodenheimer*, 592 F.3d at 674-75.

On remand from *In re Bodenheimer*, the Bankruptcy Court denied the compensation Earwood had requested and required him to make certain payments. The Bankruptcy Court found that Earwood had not turned over certain money nor made an accounting pursuant to § 543(b), and that his services had not provided a "benefit to the estate." The District Court affirmed the Bankruptcy Court on appeal. *Earwood*, 2013 WL 5234116, at *3.

*Earwood* is factually inapposite here. In the instant case, Appellee Black did indeed oppose the bankruptcy and filed a motion to dismiss it, believing that Goggans did not have the authority to file for bankruptcy. However, Appellee Black did not simply refuse or "fail to" turn over the Debtor's property after the bankruptcy was filed on December 9, 2013.[8]

Instead, following RRCH's Emergency Motion to Compel Turnover of Property Held by Receiver, the Bankruptcy Court held a hearing on the motion on December 17, 2013. *See* USBC Doc. No. 26 (Agreed Order on Debtors' Joint Emergency Motion, issued December 20, 2014). As a result of the explicit agreement between Appellee and the bankruptcy Debtors, the Bankruptcy Court's Agreed Order contained a number of specific points. The Bankruptcy Court

---

[8] Furthermore, Appellee is *not* requesting compensation for any of his or Crouch & Ramey's time or services in filing the motion to dismiss or otherwise opposing the bankruptcy. *Cf. In re Bodenheimer*, 592 F.3d at 674-75. Additionally, this Court has already found that Appellee

enumerated the individual orders, under its preliminary finding that "The Debtors and the Receiver having announced an agreement on the Motion and the Court finding such an agreement is in the best interest of the Debtors and their estates, it is accordingly"

> ORDERED that to the extent the Receiver intends to seek dismissal of the Debtors' cases on the basis of the lack of authority to file bankruptcy, such motions shall be filed no later than December 20, 2013 (the "Dismissal Motion"); it is further

> * * *

> ORDERED that the Receiver shall maintain the integrity and security of the Property, shall not move or otherwise alter the Property, and shall ensure that the Facility is properly insured; it is further

> * * *

> ORDERED that in the event the Court denies the Dismissal Motion, the Receiver shall turnover the Property within two (2) days following entry of the Court's order; it is further

> ORDERED that the Receiver shall bear all additional costs associated with maintaining the storage and security of the Property until his turnover of the Property; it is further

> ORDERED that the Receiver shall not provide any party, other than the Debtors and their agents and representatives, any of the Property or otherwise provide access to the Property while the Debtors' bankruptcy cases are pending; it is further

> ORDERED that in the event the Debtors require access to any books and records prior to the Court's determination on the Dismissal Motion, Receiver shall provide the Debtors' agents and representatives access to those books and records on twenty-four (24) hour notice with such notice being given by the Debtors to the Receiver and Ashley Ellis, Receiver's counsel, via email and/or fax; it is further

> * * *

> ORDERED that the Receiver shall cooperate with the Debtors and provide Debtors' agents and representatives access to the Property so the Debtors can

Black's services did provide a benefit to the bankruptcy estate. *Id.*

> amend and update their service matrices which shall be filed with the Court within
> seven (7) days from entry of this order.

Agreed Order on Debtors' Joint Emergency Motion to Compel Turnover (USBC Doc. No. 26), at

1-3. Appellee timely filed his motion to dismiss and RRCH timely filed its opposition thereto

(USBC Doc. Nos. 27, 51). On January 22, 2014, the Bankruptcy Court issued its Order Denying

Motion to Dismiss (USBC Doc. No. 71). Notably, the Creditors' Committee was not appointed

until January 23, 2014 (USBC Doc. No. 73) and the Chapter 11 Trustee was not appointed until

February 6, 2014, *see* USBC Doc. No. 96, after this sequence of events was completed.

However, the Bankruptcy Court's Agreed Order was noticed to the creditors and counsel by first

class mail and electronically via CM/ECF on December 23, 2014. *See* USBC Doc. No. 33.

Two oppositions were filed to Appellee Black's motion to dismiss (*see* USBC Doc. Nos. 50, 51),

including that of the Debtors, but no objection was filed to the Bankruptcy Court's Agreed Order.

The Court concludes that the various creditors had no objection to the Agreed Order.

Accordingly, the Court finds that the Bankruptcy Court's Agreed Order – which, by its

definition, was agreed to by Appellee Black, the Debtors and the Bankruptcy Court, and to which

no creditor objected – meets the standard of 11 U.S.C. § 543(d)(1), even though the Agreed

Order does not specifically cite that section. In other words, the Bankruptcy Court properly

allowed Appellee to retain possession of the Debtors' property in the pendency of the motion to

dismiss and not turn the property over.

During the Bankruptcy Court's October 23, 2014, hearing on Appellee Black's request

for compensation, Appellee testified that once the Bankruptcy Court denied the motion to

dismiss, he cooperated with the Debtors' representatives and allowed them to take whatever they

wanted of the property he had seized under the receivership orders.  Tr. 25:25 – 26:6.

Also during the hearing, On-Target's Mr. Sessions testified that Appellee Black's counsel, Ms. Ellis, had contacted him on or about March 31, 2014, about turning the stored property over to the Trustee and/or the Debtor.  Tr. 39:20-23.  Mr. Sessions further testified that he was aware that Ms. Ellis had also offered the property to Appellants, but from that time until "probably a week" before the October 23, 2014, hearing, nobody from the "Chapter 11 Trustee or the estate contact[ed] [him] about coming to get that information - - the property[.]"  Tr. 39:25 – 40:4.  *See also* Mem. Op. at ¶¶ 24-29 (summarizing the testimony above).  It appears to the Court that Appellants' argument that Appellee failed to turn over the Debtor's property is little more than a paper tiger, inasmuch as it seems the Chapter 11 Trustee had little interest in actually receiving and taking charge of any of the Debtor's property.

In summary, the facts of *Earwood*  and *In re Bodenheimer* are wholly distinguishable here.  Appellee Black has not requested compensation for his or Crouch & Ramey's services in opposing the bankruptcy and filing the motion to dismiss.  The Court has found that Appellee's services provided a benefit to the estate, not the least of which is providing books and records that facilitated a post-petition litigation settlement of over $2,000,000.00.  Particularly telling is that the Bankruptcy Court issued an Agreed Order, signed onto by the Debtors and unobjected-to by any of the creditors, that allowed Appellee to retain possession and control of the Debtors' property until the motion to dismiss was determined.  The Court has found that the Agreed Order was consistent with 11 U.S.C. § 543(d)(1).

In short, Appellants' contention as to any failure by Appellee under § 543(b) is without merit.

**IV.    CONCLUSION**

In view of the above discussion, the Bankruptcy Court's decision (Memorandum Opinion and Order, USBC Doc. No. 265) is **AFFIRMED** and the instant appeal is **DENIED**.

**It is SO ORDERED.**

**SIGNED this 7th day of March, 2016.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE